UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTORIA SMITH,

    Plaintiff,

v.                                    Case No:   8:17-cv-1646-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Victoria Smith, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Child's Insurance Benefits ("CIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

**A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

In 2008, the SSA found that Plaintiff, born in February 1996, was disabled and entitled to Supplemental Security Income (SSI) as a child. (Tr. 39). When Plaintiff attained the age eighteen, the agency had to re-determine Plaintiff's disability status as an adult, and the agency found Plaintiff was no longer disabled as of April 1, 2014. (Tr. 24, 39-40). The SSA upheld this determination upon reconsideration after a hearing by a state agency disability officer. (Tr. 49-67). While appealing her SSI disability status, Plaintiff applied for CDIB, alleging she had become disabled on February 4, 2014. (Tr. 776-782). After a hearing, Administrative Law Judge ("ALJ") R. Dirk Selland issued a decision on July 20, 2016, finding Plaintiff' was no longer disabled as of April 1, 2014, and that she has had not become disabled again since that date. (Tr. 21-38, 796-845). The Appeals Council denied Plaintiff's request for review on May 23, 2017. (Tr. 9-13). Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g) and 1383(c)(3).

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2014, the date Plaintiff was notified she was found no longer disabled based on a redetermination of disability under the rules for adults who file new

applications. (Tr. 24). At step two, the ALJ found that since April 1, 2014, Plaintiff had the following severe impairments: oppositional defiance disorder, attention deficit disorder, developmental delay, Asperger's syndrome, and anxiety disorder. (Tr. 24). At step three, the ALJ found that since April 1, 2014, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26).

Before proceeding to step four, the ALJ found that Plaintiff, since April 1, 2014, had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant is limited to work that is simple as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks in a work environment free of fast paced production requirements, which is defined as constant activity with work tasks performed sequentially in rapid succession; involving only simple-work related decisions; with fuew, if any, work place changes; and no more than frequent interaction with supervisors.

(Tr. 28). At step four, the ALJ found that Plaintiff had no past relevant work. (Tr. 37).

At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in the national economy in significant numbers that Plaintiff can perform. (Tr. 37). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff, since April 1, 2014, could perform such jobs as cleaner/housekeeper, advertising material distributor, and sorter. (Tr. 37-38). The ALJ concluded that Plaintiff's disability ended on April 1, 2014, and that she had not become disabled again since that date. (Tr. 38).

**II.     Analysis**

Plaintiff raises a single issue on appeal: whether the ALJ erred in his analysis of the medical opinion evidence of record proffered after Plaintiff's slip and fall accident in September 2014. (Doc. 22 p. 7-9). Plaintiff argues that the ALJ abused his discretion in failing to accord significant

weight to the opinions of Dr. Robert Martinez, Dr. Edward Jacobson, and Dr. Dexter Frederick. (Doc. 22 p. 7). Plaintiff argues that there were no medical opinions proffered after the September 2014 slip and fall accident that conflicted with the opinions of Drs. Martinez, Jacobsen, and Frederick. (Doc. 22 p. 8). Plaintiff argues that the ALJ should have ordered an updated consultative examination or utilized a medical advisor if he had doubts about the opinions of the treating physicians. (Doc. 22 p. 8). In response, Defendant argues that the ALJ provided good reasons, supported by substantial evidence for giving "little" or "minimal" weight to the physical limitation findings noted by Dr. Martinez, Dr. Jacobson, and Dr. Frederick. (Doc. 25 p. 7).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported

a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id*.

In this case, the Court finds that Plaintiff has failed to show that the ALJ erred in his treatment of the opinion evidence from Dr. Martinez, Dr. Jacobson, and Dr. Frederick. By the Court's estimation, the ALJ thoroughly reviewed the medical records from these physicians, adequately stated with particularity the weight assigned the opinions, and provided good cause for rejecting parts of the opinions. For example, the ALJ explained his reasoning in affording Dr. Martinez's opinion minimal weight as follows:

> I afford minimal weight to Dr. Martinez's opinion that the claimant has an overall permanent impairment rating of 20%. Permanent impairment ratings have no correlation to Social Security standards. Further, Dr. Martinez does not address the claimant's specific abilities and limitations. I also afford minimal weight to Dr. Martinez's restrictions concerning the claimant's abilities to lift and avoid high impact activities. The surrounding context indicates that Dr. Martinez intended these to be instructions, not a definite statement regarding the claimant's abilities. Further, Dr. Martinez offered no duration for these instructions. Examinations generally revealed full strength. Also of note, Dr. Martinez indicated that the claimant could perform a number of low impact activities such as walking, swimming, stationary bike riding, rowing exercises, elliptical usage, Stairmaster, and tai-chi. These activities suggest less limitation than alleged. Despite Dr. Martinez's conclusion that the claimant would continue medical care costing $4,000 to $5,000 annually, the claimant, the claimant sought treatment only once after the date of Dr. Martinez's final evaluation. Thus, this suggests that Dr. Martinez may have overestimated the claimant's need for care and the severity of her symptoms.

(Tr. 34).

The ALJ's analysis provided good cause for giving only minimal weight to Dr. Martinez's opinion. The ALJ properly noted Dr. Martinez's conclusory opinion that Plaintiff had a "permanent impairment rating" of 20% had no correlation to Social Security standards. (Tr. 34). Such statements are not medical opinions, but rather an opinion reserved for the Commissioner

and not entitled to any special significance or evaluation. *See* 20 C.F.R. §416.927(d). Further, the ALJ explained that Dr. Martinez failed to provide a sufficient explanation for his opinion and appeared to rely on Plaintiff's subjective complaints. (Tr. 34, 765-68). A claimant's subjective complaints, however, are not an acceptable basis for an opinion. *See* 20 C.F.R. § 416.927(c). While Dr. Martinez claims Plaintiff would have symptoms "indefinitely" – he failed to explain or describe these "symptoms" in any detail. He also failed to offer any duration for his instructions concerning Plaintiff's restrictions on lifting and avoiding high impact activities. (Tr. 34, 765-768). Further, the ALJ noted that Dr. Martinez indicated that Plaintiff could perform a number of other low-impact activities such as walking, swimming, bike riding, rowing and elliptical usage, which also suggest less limitation than alleged. (Tr. 34).

Likewise, the ALJ's decision shows that he conducted a careful analysis of the record from Dr. Jacobson and Dr. Frederick and provided good cause for according minimal weight to their opinions. As to Dr. Jacobson's opinions, the ALJ explained:

> I afford minimal weight to Dr. Jacobson's "Final Evaluation." Dr. Jacobson's conclusions are not consistent with his conclusions. Despite reporting that the claimant has "residual fibrosis and instability," Dr. Jacobson failed to specify testing which demonstrate this. He did not perform any muscle strength testing. Dr. Jacobson's physical examination indicated only that the claimant had some tenderness and pain with forward bending. There is no documentation of restricted range of motion. Dr. Jacobson's findings indicate negative straight raise tests and good sensation. Additionally, Dr. Jacobson failed to reference obesity at all in his physical examination records. I also note Dr. Jacobson indicated that the claimant suffers from anxiety and dizziness. However, there are no objective tests confirming dizziness, nor consistent complaints of such. The claimant consistently denied dizziness when receiving mental health care. While mental health records confirm that the claimant sometimes appeared anxious, this anxiety did not impeded her ability to present cooperatively. The claimant also testified that she can interact with the general public. Finally, the evidence does not support Dr. Jacobson's statements regarding the claimant's prognosis and needs for treatment. Dr. Jacobson supposed that the claimant would require more than $2,000 care annually. After his treatment, the claimant sought treatment only once. Additionally, although he reported that the claimant would experience six to eight episodes of exacerbations annually, the claimant's lack of

treatment suggests that this has not occurred. Like Dr. Martinez, this statement regarding the need for future care and the claimant's failure to seek any suggests that Dr. Jacobson may have overestimated the claimant's symptoms and need for care.

I also afford minimal weight to Dr. Jacobson's "work release" note and his conclusion that the claimant cannot walk long distances dated September 2015. Dr. Jacobson provided no treatment records to support his conclusion and his last thorough examination dated January 2015 revealed only tenderness and pain with forward bending. Thus, Dr. Jacobson submitted his letters dated September 2015 approximately nine months after he examined the claimant suggesting that he may not be basing his opinions solely on his objective findings. I also note that the term "long distances" is vague.

(Tr. 34-35). As to Dr. Frederick's opinions, the ALJ explained:

I also afford minimal weight to the letter dated October 2014 submitted by Dr. Frederick. (Exh. 12F). Although Dr. Frederick asserts that the claimant is disabled, he does not detail her abilities. Dr. Frederick's conclusions are contrary to the claimant's testimony that she is disabled due to only to physical problems, not mental problems. I note that Dr. Frederick does not refer to the claimant's musculoskeletal limitations, which are the basis of the claimant's allegations. Although he references "chronic pain" he does not providence the etiology of this pain. The claimant's "short stature" does not indicate limitations by itself. There is no support in the medical evidence for "hand" limitations. The claimant can use a cell phone, text, use a computer, and prepare simple meals. Further, the claimant has had very little treatment for the mental impairments referenced by Dr. Frederick's letter. Although the claimant attended special education classes, she appeared to do well in these classes. The claimant enjoys a wide range of activities including going to the mall and movies. Thus, the medical evidence and the claimant's activities do not support Dr. Frederick's conclusions. Additionally, Dr. Frederick failed to address the claimant's specific abilities and limitations.

I also afford little weight to Dr. Frederick's latter dated January 26, 2015. (Exh. 20F). Dr. Frederick reported that the claimant is "unable to walk to class and needs specialized transportation." Dr. Frederick indicates that the claimant suffers back pain due to herniated disc. The only statement regarding the claimant's ability is that the claimant is "unable to walk long distances." I have no way to determine what Dr. Frederick considers "long distances." This is vague. Further, the claimant testified that she can walk at the mall which suggests that she can walk some distances. I note that the claimant had very limited treatment for her physical impairments after January 2015. She sought only chiropractic treatment on one occasion. This lack of treatment strongly suggests that-the claimant's symptoms are less severe than alleged.

> Despite the claimant's lack of treatment, Dr. Frederick submitted an additional letter dated March 2016 also indicating that the claimant has "difficulty with prolonged walking and that needs specialized transportation to get her to and from appointments school and work." (Exh. 23F). He goes on to point out that the claimant needs the "support of her family to function." He reported that the claimant "cannot be responsible to handle her own finances; she cannot be responsible to travel on a bus alone; she cannot be able to make decisions that require three dimensional thinking." As noted above, there is no indication that Dr. Frederick treated the claimant from January 2015, the date of his final assessment, through March 2016, the date of his opinion. Thus, the basis for his conclusions is unclear. Dr. Frederick does not clarify what he considers "three dimensional thinking." Additionally, although not dispositive of the issue regarding the lack of weight I am affording to his opinion, Dr. Frederick is not a mental health professional. Mental health treatment records suggest that the claimant has greater abilities. These records indicate that the claimant can make her own medical decisions, present as cooperative, and communicate effectively. They also indicate that she often presented with few mental symptoms. For these reasons, I also afford minimal weight to this opinion.

(Tr. 33-34).

Given the ALJ's thorough analysis of the opinions of Drs. Martinez, Jacobson, and Frederick, the Court rejects Plaintiff's contention that merely substituted his medical opinion for that of the medical experts. Plaintiff has made no showing that the reasons offered by the ALJ for assigning these opinions minimal weight do not constitute good cause.

Finally, the Court rejects Plaintiff's argument that the ALJ erred by failing to develop the record. While an ALJ has a basic duty to develop a full and fair record, there must be a clear showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded for further development of the record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Plaintiff has failed to show that she was prejudiced by the ALJ's conduct at the hearing or in his development of the record.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

*[signature]*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties